**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **M.C.**

**No. 21-0237** (Kanawha County 16-JA-583)

**MEMORANDUM DECISION**

Petitioner Mother M.M., by counsel Michael M. Cary, appeals the Circuit Court of Kanawha County's February 22, 2021, order terminating her parental rights to M.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), J. Rudy Martin, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner in November of 2016, alleging physical abuse and a failure to provide for the child. Specifically, the DHHR alleged that then-seven-year-old M.C. "acted up" in school and petitioner was notified. M.C. did not attend school the next day, a Friday, but reported back to school the following Monday. M.C. disclosed to school personnel that petitioner punished him for acting up at school the prior week by kicking him in his stomach. The child further reported that petitioner had struck him on his face in a prior unrelated incident. A Child Protective Services ("CPS") worker spoke to M.C. regarding his disclosures and observed bruising on the child's abdomen. According to the DHHR, petitioner "had been previously substantiated for physical abuse" of the child and criminal charges were brought but later dismissed. The DHHR lastly alleged petitioner had difficulty controlling her

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

anger and that she failed to provide the child with the necessary food, clothing, supervision, and housing. Petitioner waived her preliminary hearing.

The circuit court held a series of adjudicatory hearings, with various continuances, over the course of several months. Petitioner was provided with services and drug screening during that time, and she frequently tested positive for marijuana. The final adjudicatory hearing was eventually held in May of 2018 and, after the presentation of evidence, the circuit court found that the child suffered substantial emotional, mental, and physical abuse at the hands of petitioner. Accordingly, the circuit court adjudicated petitioner as an abusing parent.

Subsequently, an amended petition was filed against petitioner, adding allegations of physical abuse against M.C.'s older half-sibling. However, this older child is not at issue in this appeal. The half-sibling disclosed that petitioner previously struck him on the elbows with a frying pan, abused drugs, and sold drugs in order to pay her utility bills, among other things. The circuit court held another adjudicatory hearing in regard to the amended petition, and the DHHR filed an updated report indicating that petitioner failed to consistently participate in services, failed to consistently visit with M.C., refused to visit with M.C.'s half-sibling, and repeatedly called the half-sibling a "snitch" for making allegations against her. Petitioner also failed to provide documentation of employment, was evicted from her home, and behaved erratically with service providers. The circuit court adjudicated petitioner as an abusing parent with regard to the half-sibling based on the amended petition.

At a hearing held in October of 2018, petitioner informed the circuit court that she would consent to M.C. being placed in the permanent guardianship of his foster parents. The circuit court found that petitioner knowingly, freely, and voluntarily consented to the permanent guardianship and ordered the same to occur. The circuit court also granted petitioner visitation with the child at his discretion. However, delays in the child's permanency occurred when the child was briefly removed from his foster home due to allegations of abuse; after further investigation, the child was returned to the home. Thereafter, petitioner refused to permit the permanent guardianship and continued to contact the child despite his clear and consistent desire to have no contact with petitioner. For example, petitioner attended the child's sporting events against his wishes, and the child demonstrated regressive behaviors afterwards. Eventually, in September of 2020, the DHHR advised the circuit court that it intended to seek the termination of petitioner's parental rights so that the child could be adopted by his foster parents.

The circuit court held a final dispositional hearing in February of 2021. A CPS case manager testified that petitioner had been non-compliant with services throughout the pendency of the case and ceased contact with the DHHR after November of 2020. The case manager further testified that the child consistently refused to visit with petitioner but that petitioner attempted to contact the child by showing up at his sporting events unannounced. According to the caseworker, the child would become visibly upset upon seeing petitioner and exhibited significant regressive behaviors including night terrors, anger outbursts, shaking, and wetting the bed.

A former case manager testified that between 2017 and 2019, the guardian and petitioner's counsel advocated for a subsidized legal guardianship, but petitioner ultimately refused to proceed with the guardianship because she did not want to relinquish control over the child. The former

case manager also testified that the child would cry when he heard petitioner's voice for fear of being returned to her care and was adamant that he did not want to see her. The former case manager stated that the child did not want to be placed in a permanent guardianship, as he wanted to be adopted by his foster parents and consistently disclosed that petitioner physically abused him while he was in her care.

A CPS supervisor testified that petitioner had been offered supervised visits and parenting and adult life skills classes but failed to comply. The supervisor stated that petitioner continuously rescheduled appointments, did not respond to telephone calls, failed to complete anger management classes, and failed to comply with any directives. The supervisor testified that petitioner was verbally aggressive with the DHHR staff, expressing concern that her behavior was due to substance abuse. However, substance abuse was not substantiated due to petitioner's failure to submit to drug screens.

Petitioner testified and denied abusing the child and further disputed the CPS workers' testimony. Petitioner further denied being aware that she was ordered to submit to a psychological evaluation or complete anger management classes. After the presentation of testimony, the circuit court found that the child suffered substantial emotional, mental, and physical abuse at petitioner's hands and that petitioner failed to comply with services. The circuit court found that petitioner's failure to complete anger management classes was particularly concerning due to evidence that petitioner kicked the child in the stomach and otherwise physically abused him. The circuit court further found that petitioner failed to comply with drug screens, was verbally abusive to DHHR staff, and displayed erratic behavior. Ultimately, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Petitioner appeals the circuit court's February 22, 2021, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]The status of the father's parental rights is unclear from the parties' briefs and the appendix record. The parties assert that the permanency plan for the child is adoption by his foster family.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights. Petitioner states that she participated in some remedial services offered to her but contends there was a "miscommunication" between the DHHR and her prior counsel, leading to her failure to complete anger management classes. Petitioner contends that she was more than willing to participate in services, that she remained in the same residence throughout the proceedings, and that she maintained the same telephone number so that the DHHR could contact her. Petitioner argues that, absent this miscommunication, she would have participated in the services ordered and would have demonstrated that there was a reasonable likelihood that she could correct the conditions of abuse and neglect.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

In this case, the circuit court did not err in finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. While petitioner argues that she participated in some services and would have participated in more had there not been a miscommunication between prior counsel and the DHHR, the record demonstrates that petitioner was provided with services over the course of several years but failed to comply. Testimony established that petitioner repeatedly rescheduled services, failed to attend sessions, and refused to return her caseworker's phone calls. Petitioner attended several hearings throughout the pendency of this case wherein she was ordered to participate in parenting and adult life skills classes, random drug screens, anger management classes, and a psychological evaluation. Despite being physically present when the circuit court set forth these directives, as of the dispositional hearing, petitioner testified that she did not realize that she was required to complete certain services. As such, the circuit court found that petitioner's testimony in this regard lacked credibility and was contrary to the evidence presented. Moreover, the circuit court found that petitioner was verbally hostile towards DHHR personnel, displayed erratic behavior, and failed to complete any services to remedy the conditions of abuse and neglect. The circuit court further found that the child was afraid to return to petitioner's home, was "adamant that he wants nothing to do with" petitioner, and displayed regressive behaviors when contacted by petitioner. While petitioner argues that she should have been given more time to participate in services prior to the termination of her parental rights, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia

4

Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to complete any services designed to remedy the conditions of abuse and neglect, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Accordingly, petitioner is entitled to no relief in this regard.

Lastly, because the status of the father's parental rights is unknown, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the dispositional order. As this Court has stated,

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 22, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: October 13, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6